**SPRINGFIELD (city) v McDANIEL**

Ohio Appeals, 2nd Dist, Clark Co

No 312.   Decided Dec 10, 1932

M. E. Spencer, City Solicitor, Springfield, for plaintiff in error.

Anderson & McKee, Springfield, and W. Y. Mahar, Springfield, for defendant in error.

BY THE COURT

We have considered the record in this case together with the exhaustive briefs of counsel with care, as the same present an interesting question insofar as the maintenance of the bridge in question is concerned. We shall not attempt to discuss the testimony nor review the authorities cited in detail. It will not be necessary so to do, as counsel are familiar with same. We will content ourselves with announcing the conclusion at which we have arrived upon the different questions presented.

There is no question in this case of notice as the city admits that it constructed and has maintained the bridge in its present condition for a number of years.

The case is also unusual in that most suits against cities for damages result from some defect in the traveled portion of the roadway. It is admitted that the traveled portion of Lowry Avenue as it approached the bridge in question and the roadway of the said bridge were in good repair.

**Sec 3714 GC** provides that municipal corporations shall cause the streets, bridges, etc., of its highways to be kept open, in repair and free from nuisance. Did this bridge as constructed and maintained by the city constitute a nuisance?

The nature of the construction of this bridge as averred in the petition is substantially supported by the testimony. It is admitted that it was raining upon the night in question and that the atmosphere was misty and that it was difficult to see ahead for any considerable distance.

On page 4 and the following pages of the record, the husband of plaintiff describes the manner in which he approached this bridge, the rate of speed at which he was traveling and the result of his collision with this girder as follows:

"Q. Just what happened as you neared the Pennsylvania Railroad bridge on Lowry Avenue?

A. Well, you go up quite a little grade there on the bridge—not having any warning light of any kind, and the light there was insufficient to show the bridge—if the light was burning—I couldn't say—but it was insufficient to show the bridge, and just about the time we struck the bridge I saw it—not before.

Q. What happened then?

A. As near as I can remember it seems to me the machine—the right wheel ran up the girder and turned the machine completely over and then it settled back on the side.

Q. What do you mean?

A. The right wheel—there is a flange on each side of the girder. The side of it sticks up between seven or nine feet—it

might not be quite that high; the side that extends up and the right wheel came on the bridge and there is a flange that held the wheel there and the machine turned completely over on the top, etc."

The testimony shows that there was a flange on this girder which doubtless contributed to holding the wheel of the automobile. This witness on pgaes 12, 19, 20, etc., of the record further describes the manner of approaching this bridge and his conduct in driving the machine and the absence of a warning light.

Mr. Bird, Civil Engineer, on pages 27, etc., of the record also describes this bridge, the approaches thereto and gives in detail the measurements which he made. On page 29 of the record he refers to the width of these flanges as being sufficient to accommodate the tire of an automobile.

The interesting question in the case relates to the issue as to whether the said bridge as constructed and maintained constitutes a nuisance in violation of the provisions of §3714 **GC** above quoted.

The jury in effect found that it did. At the request of counsel for plaintiff in error, the court submitted to the jury the following interrogatory:

"Q. Was Lowry Avenue and the bridge at the time of the accident in a reasonably safe condition for travel in the ordinary mode?

"A. No."

This answer, as well as the general verdict, was signed by eleven of the twelve jurors.

We concede that this question is not free from some doubt, yet upon a careful consideration of the facts disclosed by the record, we are of opinion that the jury was warranted in making the finding which it did, and that such bridge as constructed and maintained by the city under the circumstances as they existed on the evening in question, constituted a nuisance in this public street.

It is admitted that there was no light over this bridge, but the testimony shows that there was an overhead street light a short distance north of the bridge.

The city claims that the failure of the wiper on the windshield of the said automobile to work properly caused or contributed to the accident. The husband of plaintiff in error testifies that the wiper on the windshield was in working order and that he was using the same. The plaintiff testifies in substance to the same effect. There is testimony tending to show that the windshield wiper was not working at the time in question. This therefore became a question of fact for the jury rather than the court.

We think the court properly overruled the motion of plaintiff in error for an instructed verdict. There were questions of fact involved which should have been determined by the jury rather than the court.

The question as to whether defendant in error was guilty of contributory negligence was a question of fact for the jury and we find nothing in the record which would warrant this court in disturbing the verdict upon that issue.

It must be kept in mind that the defendant in error was a passenger. It is true she was a passenger with her husband but the fact that the driver of the automobile was her husband does not change the rule as to what constituted contributory negligence upon the part of a passenger.

The trial court, at the request of counsel for plaintiff in error, gave four special instructions to the jury in advance of the argument of counsel. These four special charges stated the law applicable to the case in the most favorable light to which plaintiff in error was entitled.

Special instruction No. 2 was as follows:

"When a bridge, and a street of which it is a part, are in a reasonably safe condition for travel in the ordinary mode, they are free from nuisance."

Special instruction No. 3 was as follows:

"I charge you that if you find from the evidence, that plaintiff was seated beside the driver, with apparently equal opportunity to observe impending dangers, and within easy access so as to readily communicate to the driver the result of her observation, she was required to exercise ordinary care for her own safety, and was required to so use her faculties of sight and hearing to discover dangers incident to such bridge and apprize the driver thereof as would a person of reasonable and ordinary prudence under the same or similar circumstances."

The evidence shows that the windshield immediately in front of plaintiff was covered with mist which affected her vision ahead, but as above stated the testimony of defendant in error and her husband is to the effect that the wiper on the wind-

shield in front of the driver was in working order and was being used at the time in question by the driver of the automobile.

In reference to the charge of contributory negligence upon the part of the passenger, we think, as above stated, that the special instruction given by the court at the request of counsel for plaintiff in error, and the general charge of the court upon this subject presented that issue to the jury in the most favorable light to which plaintiff in error was entitled.

The rule is well settled in this state that a passenger is only required to do that which a passenger under like circumstances in the exercise of ordinary care, would be required to do. There may be occasions when a passenger is in a position to see and know evidence of danger which might not be observed by the driver and when ordinary care would require that the passenger warn the driver of such danger, but, the passenger is required to do only those things which a passenger under like circumstances in the exercise of ordinary care would do.

Counsel for plaintiff in error seriously contend that the verdict is excessive and must have been rendered under the influence of passion or prejudice. Defendant in error, as well as her husband and other witnesses, has testified in detail as to the injuries sustained in this accident and as to the result of such injuries.

Dr. Rinehart, on pages 32 to 41, testifies in detail as to the nature of the injuries received by defendant in error in this accident. On pages 35 and 36 he testifies that the injuries .due to the contusions about the pelvis will be permanent. He explains in detail the effect of such injuries. He also testifies that the injury to her shoulder was such that the shoulder will always be weak.

We think the award made by the jury was liberal, but from a consideration of the record, we would not be prepared to find that 'in view of the permanency of some of the injuries so received, that the verdict was the result of passion or .prejudice, or is so excessive as to warrant a reviewing court in disturbing same.

We find no prejudicial error in the lower court in dismissing the railroad company from this proceeding.

We have considered all of the errors complained of by counsel for plaintiff in error both in the brief and during the oral argument of the case but finding no error in the record which we think would justify this court in disturbing the judgment of the lower court, the same will be affirmed.

ALLREAD, PJ, HORNBECK and KUNKLE, JJ, concur.